IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Case No. 1:20-cr-169 |
| | ) | Honorable Liam O'Grady |
| RYAN MOURER, | ) | |
| | ) | |
| Defendant. | ) | |

### DEFENDANT'S POSITION ON SENTENCING

Ryan Mourer is before the Court having pleaded guilty to one count of conspiracy to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Mr. Mourer accepts responsibility for his actions, is genuinely remorseful, and is prepared to accept the consequences of his behavior.

For the reasons outlined below, Mr. Mourer, through counsel, submits that a sentence of 120 months, the statutory mandatory minimum, is sufficient but not greater than necessary to achieve the goals of sentencing. A sentence of 120 months is a significant and severe punishment. It will, however, allow Mr. Mourer ample opportunity to avail himself of the rehabilitative resources within the Bureau of Prisons, address the root cause of his conduct – namely, his own addiction - and give him a chance to, once again, contribute positively to society upon release.

This memorandum will first argue that a horizontal departure to Criminal History Category (CHC) III is appropriate because CHC IV substantially over-represents the seriousness of Mr. Mourer's criminal history. Should the Court grant the motion for departure, Mr. Mourer's advisory guideline range would be 120-135 months.[1] Notwithstanding the Court's ruling on the motion for

---

[1] The advisory guideline range that results would be 108-135 months, but the mandatory minimum limits the low end of the range to 120 months.

1

departure, counsel will argue that consideration of 18 U.S.C. § 3553(a) factors weigh in favor of a sentence of 120 months.

    **I.    MOTION FOR HORIZONTAL DEPARTURE IN CRIMINAL HISTORY CATEGORY (FROM IV TO III)**

Placing Mr. Mourer in Criminal History Category IV substantially over-represents the seriousness of his criminal history. The nature of Mr. Mourer's prior offenses does not rise to the level of seriousness that would warrant a Category IV designation. Accordingly, a downward departure to Criminal History Category III is appropriate.

A downward departure under section 4A1.3 is appropriate when a defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that he will commit other crimes. U.S.S.G. § 4A1.3(b). In discussing the procedure for a departure under 4A1.3, the Guidelines specifically point out that "the court should consider that the nature of the prior offenses rather than simply their number is often more indicative of the seriousness of the defendant's criminal record." U.S.S.G. § 4A1.3, Commentary, 2(B).

    **A.  <u>Criminal History Category IV Substantially Over-Represents the Seriousness of Mr. Mourer's Criminal History.</u>**

In *United States v. Nelson*, 166 F. Supp. 2d 1091 (E.D. Va. 2001), the court granted a motion for downward departure based upon over-representation of criminal history from Criminal History Category VI to Criminal History Category III. In a review of the criminal records of drug defendants classified in Categories III through VI, this Court noted that Mr. Nelson's prior record, which included escape from police custody and damage to a police vehicle, speeding to elude police officers, drug charges, and a malicious wounding conviction, stood in "sharp contrast" with defendants classified in Criminal History Category V. *Id.* at 1097. This Court concluded that since

Mr. Nelson had no offenses involving firearms, drug distribution, or "deviant sexual behavior," Mr. Nelson's record was not comparable to offenders properly classified in Category V, despite Mr. Nelson's drug possession offenses. *Id.* at 1098.

Similarly, in *United States v. Wilkerson*, 183 F. Supp. 2d 373, 380-81 (D. Mass. Jan. 10, 2002), a District Court in Massachusetts granted a downward departure from Category VI to Category IV, finding that the seriousness of the defendant's criminal history was over-represented where the defendant had convictions for possession of cocaine with intent to distribute, operating a motor vehicle on a suspended license, operating to endanger, receiving stolen property, larceny, possession of burglarious tools, and other motor vehicle and drug charges. Noting Mr. Wilkerson's lack of convictions for crimes of violence, the court remarked that criminal history downward departures have been granted for defendants whose records included convictions for armed robbery and assault with a deadly weapon. *Id.* at 381. The court found that placing Mr. Wilkerson in the same category as an individual "with a succession of violent crimes, for which they received multiple lengthy sentences" would be "out of proportion to his real culpability." *Id.*

Even in a case where the defendant was convicted of conspiring to commit assault in aid of racketeering and attempting to commit assault with a dangerous weapon, a District Court in New York granted a downward departure from Category V to Category IV. *United States v. DeJesus*, 75 F. Supp. 2d 141, 142 (S.D.N.Y. July 26, 1999). The court noted that defendants who fall in Category V, "the highest category of criminal offender short of a career criminal," typically have a history of "serious crimes requiring lengthy imprisonment." *Id.* at 144. Although the defendant had a criminal history which included a combination of violence and drug offenses (convictions for third degree assault, attempted sale of marijuana, and attempted criminal sale of a controlled substance), the court considered placement in Category V to be inappropriate.

3

In this case, Mr. Mourer's record does not warrant placement in Category IV. While the defendant in *Nelson* had a number of infractions and minor offenses, he also had convictions for much more serious offenses, including drug charges and malicious wounding. The defendant in *Wilkerson* had multiple drug charges, and the defendant in *DeJesus* had convictions for crimes of violence and attempted sale of drugs. In reviewing the records of some defendants in Category IV, the Court found that although some of the defendants in Category IV had committed crimes of fraud, defendants who received a Category IV designation commonly had convictions for crimes of violence and drug possession and distribution. The Court in *Nelson* noted that Mr. Nelson lacked a record rising to the level of seriousness appropriate to the Category IV classification. *Nelson*, 166 F. Supp. 2d at 1098. Similarly, Mr. Mourer's criminal history points are derived from convictions for theft, evading arrest, and drug possession (less than one gram). His record is devoid of convictions for crimes of violence, deviant sexual behavior, or drug distribution.

In *Nelson*, this court made clear that Criminal History Categories IV, V, and VI are reserved for individuals with prior offenses involving firearms, drug distribution, or deviant sexual behavior. *Nelson*, 166 F. Supp. 2d at 1097-8 (reviewing the criminal histories of Gil Daughtry, Vincint Buckler, DeAndre Majett, and Ryan Hume). Although Mr. Mourer has a criminal record, that caliber of crimes is not present in Mr. Mourer's criminal history.

    **B.** <u>Mr. Mourer's Criminal History Points Derive from One Brief Time Period Fifteen Years Ago</u>

Mr. Mourer takes full responsibility for his criminal history. However, it merits attention that all of his nine criminal history points are due to several incidents that all occurred within a few months of each other. From late 2004 to mid-2005, Mr. Mourer, suffering from a methamphetamine addiction and making poor decisions, was involved with the theft of vehicles. While that does not excuse the offenses, it does provide context for the short burst of incidents

4

which occurred during a brief period, and which directly contributed to all of Mr. Mourer's criminal history points. These points are not the result of violent or drug offenses, or even due to frequent and periodic offenses. They are due to a number of bad decisions during a very short period of time, over fifteen years ago, and should not cause Mr. Mourer to be placed in Category IV, "in the company of violent offenders, drug kingpins and perpetrators of far more serious offenses," *see United States v. Paulino-Duarte*, S100CR686, 2001 U.S. Dist. LEXIS 3208, at *10 (S.D.N.Y. mar. 26, 2001).

Placing Mr. Mourer in Category IV would produce a result incongruous with the seriousness of his criminal record. The seriousness of Mr. Mourer's record is not comparable to offenders properly classified within Category IV, and he should therefore receive a downward departure to Criminal History Category III.

## II. APPLICATION OF U.S.C. § 3553(a) FACTORS

As the Court is well aware, federal courts must consider the recommended guideline range as one of seven statutory factors enumerated in 18 U.S.C. § 3553(a). *United States v. Booker*, 543 U.S. 220, 259-60 (2005). The other factors include: (a) the nature and circumstances of the offense and the history and characteristics of the defendant; (b) the kinds of sentences available; (c) the need to avoid unwarranted sentencing disparities; (d) the need for restitution; and (e) the need for the sentence to reflect the following: the seriousness of the offense; to promote respect for the law and to provide just punishment for the offense, to afford adequate deterrence, to protect the public from further crimes of the defendant and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment. 18 U.S.C. § 3553(a). Application of these factors to Mr. Mourer's case support a sentence of no more than 120 months.

A. <u>The History and Characteristics of the Defendant and the Nature and Circumstances of the Offense</u>

Ryan Mourer is a 43-year old man, described by friends and family as a good, caring, respectful, and hard-working, family man. *See* Letters from Family and Friends, attached hereto as Exhibit A. At the same time, his loved ones also recognize that Mr. Mourer became deeply depressed with the loss of his mother, father, and family business. Mr. Mourer acknowledges that these losses precipitated his return to methamphetamine abuse which, in turn, resulted in his methamphetamine distribution. While it does not excuse his conduct in any way, Mr. Mourer's addiction is undeniably a part of his poor decision-making, and consequently, a part of this offense.

Mr. Mourer grew up in Texas, near his grandparents and extended family members. Mr. Mourer's parents divorced when he was approximately three-years old. PSR ¶ 54. Although Mr. Mourer's father remained in his life, his father did not pay child support. PSR ¶ 56. Consequently, Mr. Mourer grew up poor. Indeed, his mother worked, but the family could not always make ends meet, and sometimes his family relied on donations from the local church for food. *Id*. Nevertheless, Mr. Mourer's basic needs were met, and the family – immediate and extended - was close-knit. PSR ¶ 57. Overall, Mr. Mourer had a happy childhood.



Pictures of Mr. Mourer with his sister and with his grandparents

In high school, Mr. Mourer was involved in sports, including football and track, until he was about 15 or 16. Thereafter, Mr. Mourer elected to get a job; he worked after school and on the weekends. First, he was employed by an Italian restaurant. Next, he worked in the local grocery store as a bagger and stocker. Notwithstanding a close-knit family and a fairly busy schedule, with school and employment, Mr. Mourer began experimenting with drugs and alcohol. Eventually, he was introduced to methamphetamine, the substance that would become his drug of choice later in life. PSR ¶ 65. Fortunately, Mr. Mourer's drug use in high school remained recreational and did not derail his graduation. Subsequently, Mr. Mourer worked at a fireplace installation company before joining the United States Marine Corps. PSR ¶¶ 68, 72. While in the military, Mr. Mourer did not abuse drugs. PSR ¶ 65.

After four years in the military, which included a tour overseas, Mr. Mourer returned home to his wife in Texas on an honorable discharge. The couple raised three children together – two daughters from Mr. Mourer's wife's previous relationship and a daughter born of their union. Mr.

7

Mourer took his responsibilities seriously; he is described as an excellent father by his ex-wife and his three daughters. *See* Exhibit A. Despite his involvement with his family, after his discharge from the Marine Corps, Mr. Mourer's substance use escalated. And while in throes of methamphetamine addiction, he was convicted of the rash of theft and evading offenses in 2004 and 2005 which account for all of his criminal history points.

Upon release from prison, Mr. Mourer joined his father's non-emergency medical transport company. PSR ¶ 70. During his time with the company, Mr. Mourer grew the business by adding new accounts and generating business. *Id*. Meanwhile, Mr. Mourer was also working to better himself; he completed an Associate of Arts degree in 2010 and Bachelor of Arts degree in 2013. PSR ¶ 69. Mr. Mourer continued to work with the company after his father's death in 2013. But years later, he and his father's business partner had a dispute, and Mr. Mourer left the company in 2019. The decision left Mr. Mourer essentially penniless and distraught about the loss of his father's company. PSR ¶ 70. Coupled with his mother's death a few years earlier in 2017, Mr. Mourer sunk into a depression and resorted to old habits, namely methamphetamine abuse. Eventually, Mr. Mourer turned to selling methamphetamine as a source of income and to support his own habit.

Mr. Mourer's conduct, selling methamphetamine on the darknet, was undoubtedly serious. He has accepted responsibility for his actions, he recognizes that his addiction contributed to his poor decision-making, and he understands that he will receive a significant punishment from the Court. His past, however, shows that he has the potential to be a productive member of society.

B. <u>The Need to Promote Respect for the Law, Provide Just Punishment, Protect the Community and Provide Adequate Deterrence</u>

A sentence of 120 months provides just punishment for Mr. Mourer's offense and will deter him from committing future crimes. It is a significant sentence that reflects the seriousness of the offense. Such a sentence sends a message that dealing methamphetamine online can result in many years in jail, and thereby, promotes respect for the law and provides general deterrence.

Further, a ten-year period of incarceration will certainly protect the public and provide specific deterrence. This sentence would be the longest sentence Mr. Mourer has ever received. This current period of incarceration – particularly under the conditions of confinement that exist given the COVID-19 pandemic – and the knowledge that he will be serving a multi-year sentence has already provided deterrence.[2]

Moreover, the notion that significant incarceration is necessary to achieve general deterrence is not supported by empirical research. "Increases in the severity of punishment do not yield significant marginal deterrent effects." Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime & Just. 1, 28 (2006). Instead, it is the certainty of punishment that offers greater deterrence than the severity of punishment. *See* Zvi D. Gabbay, *Exploring the Limits of Restorative Justice Paradigm: Restorative Justice and White Collar Crime*, 8 Cardozo J. Conflict Resol. 421, 447-48 (2007) ("[C]ertainty of punishment is empirically known to be a far better deterrent than its severity.").

Finally, Mr. Mourer intends to use his period of incarceration to obtain drug treatment. Ten years of incarceration is a sufficient period of time to accomplish this goal as well.

---

[2] Throughout Mr. Mourer's incarceration, the conditions at the Alexandria Detention Center have resembled those of solitary confinement. There have been no personal visits from friends and family, no professional visits, no classes, and no group programs. Most opportunities for recreation, a break from the monotony of jail life, have been strictly curtailed. Furthermore, lengthy lockdowns—in which inmates are locked in their cells for up to 23 hours each day—have been used routinely to limit infection.

## CONCLUSION

A sentence of 120 months, followed by a period of supervised release, is sufficient but not greater than necessary to achieve the goals of sentencing. Mr. Mourer also respectfully requests that the Court recommend that Mr. Mourer be designated to a facility near family and friends in Texas, specifically FCI Seagoville or FCI Bastrop, and be allowed to participate in the Residential Drug Abuse Program.

Respectfully submitted,
RYAN MOURER

By Counsel,
Geremy C. Kamens,
Federal Public Defender

By: _____/s/_____
Brooke Sealy Rupert
Attorney for Defendant
Virginia Bar No. 79729
Office of the Federal Public Defender
1650 King Street, Suite 500
Alexandria, VA   22314
(703)600-0849 (telephone)
(703)600-0880 (facsimile)
Brooke_rupert@fd.org

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 12, 2021, I will electronically file the foregoing with the Clerk of court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Philip Alito, Esquire
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314

A copy will be sent to:

Shanna Koch
United States Probation Officer
401 Courthouse Square, 3rd Floor
Alexandria, VA 22314

Pursuant to the Electronic Case Filing Policies and Procedures, a courtesy copy of the foregoing pleading will be delivered to Chambers within one business day of the electronic filing.

                                            /s/
                                 Brooke S. Rupert
                                 Attorney for Defendant
                                 Virginia Bar No. 79729
                                 Office of the Federal Public Defender
                                 1650 King Street, Suite 500
                                 Alexandria, VA 22314
                                 (703) 600-0849 (telephone)
                                 (703) 600-0880 (facsimile)
                                 Brooke_rupert@fd.org